IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

OSCAR MANUEL MONTES FLORES, *Appellant.*

No. 1 CA-CR 17-0403
FILED 8-21-2018

Appeal from the Superior Court in Maricopa County
No.  CR2016-117755-001
The Honorable Lauren R. Guyton, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza C. Ybarra
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mark E. Dwyer
*Counsel for Appellant*

**OPINION**

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in
which Judge Paul J. McMurdie and Judge David D. Weinzweig joined.

**J O H N S E N**, Judge:

¶1 Oscar Manuel Montes Flores told the employee behind the counter of a convenience store that he had a gun and moved his hand beneath his shirt and waistband as if he was holding a weapon. He demanded money, and the employee gave him what there was in the cash register. A jury convicted Montes Flores of armed robbery and other charges. We affirm, holding that it did not matter that the victim of the robbery did not see him use his hand to simulate a weapon.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Montes Flores entered a convenience store before dawn one morning, selected some sunflower seeds and a bottle of water and paid for them at the front counter.[1] His transaction complete, Montes Flores looked toward the front door, then turned again in the direction of the assistant manager behind the counter. Sliding his hand beneath his shirt and under the waistband of his pants, Montes Flores leaned forward and demanded, "Give me all your money, I have a gun." Not immediately understanding, the victim responded, "Excuse me?" After Montes Flores repeated his statement, the victim quickly opened the register and began to pull money from the drawer. Montes Flores told him to put the money in a bag. As soon as the victim handed him the bag, Montes Flores walked out of the store and drove off in a stolen SUV. Surveillance cameras captured the robbery in its entirety.

¶3 Police arrested Montes Flores after he crashed the SUV not far away. The State charged him with armed robbery, theft of a means of transportation and criminal damage caused in connection with the theft of the SUV. The State also alleged aggravating circumstances and that Montes Flores had historical prior felony convictions.

¶4 The jury found Montes Flores guilty as charged. At sentencing, he admitted two historical prior felony convictions. The superior court sentenced him to concurrent terms of incarceration, the longest of which was 14 years. Montes Flores timely appealed, and we have

---

[1] On appeal, Montes Flores challenges only his armed-robbery conviction. We view the evidence at trial in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2018), 13-4031 (2018), and -4033(A)(1) (2018).[2]

## DISCUSSION

### A.    Constitutional Validity of A.R.S. § 13-1904.

**¶5**    Montes Flores was convicted under A.R.S. § 13-1904(A) (2018), which provides that an armed robbery occurs when one who commits robbery:

> 1.  Is armed with a deadly weapon or a simulated deadly weapon; or
>
> 2.  Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.

**¶6**    Nothing in the record suggests that Montes Flores used an actual deadly weapon to commit the robbery. The theory of the prosecution was that he used his hand to simulate a deadly weapon. Montes Flores argues the statute is unconstitutionally vague because it is unclear whether it applies to a robber who uses his hand, not an object, to simulate a weapon.

**¶7**    We review the constitutionality of a statute *de novo*. *State v. McDermott*, 208 Ariz. 332, 335, ¶ 12 (App. 2004). "When a statute is challenged as vague, we presume that it is constitutional," and the complaining party bears the burden of "demonstrating the statute's invalidity." *Id*. at 335-36, ¶ 12.

**¶8**    "A statute is void for vagueness if it fails to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly." *State v. Burbey*, 243 Ariz. 145, 149, ¶ 15 (2017) (quotations omitted) (alteration in original). "Such laws violate due process because they fail to provide fair warning of criminal conduct and do not provide clear standards to law enforcement to avoid arbitrary or discriminatory enforcement." *Id*. "Due process does not require, however, that a statute be drafted with absolute precision." *State v. Burke*, 238 Ariz. 322, 326, ¶ 6 (App. 2015) (quotation omitted). "It requires only that the language of a statute convey a definite warning of the proscribed conduct." *Id*. (quotation omitted). Accordingly, a "statute is not void for

---

[2]    Absent material revision after the date of an alleged offense, we cite the current version of a statute or rule.

vagueness because it fails to explicitly define a term or because it can be interpreted in more than one way." *McDermott*, 208 Ariz. at 336, ¶ 13.

¶9          Arizona statutes do not define the term "simulated deadly weapon." *See* A.R.S. §§ 13-105 (2018), -1901 (2018), -1904. Citing *State v. Bousley*, 171 Ariz. 166 (1992), and *State v. Garza Rodriguez*, 164 Ariz. 107 (1990), Montes Flores contends case authorities have created confusion by interpreting the term inconsistently.

¶10         The defendant in *Garza Rodriguez* was convicted of two armed robberies even though, like Montes Flores, she carried no weapon. 164 Ariz. at 108. In the first robbery, she approached the cashier's booth of a self-serve gas station, demanded money and threatened to "shoot the smile off" the cashier's face. *Id.* She neither brandished an actual weapon nor used any object as a simulated weapon. In the second, she demanded money from a clerk at a convenience store while claiming to possess a gun. When the clerk challenged her to show the gun, the defendant "began moving her hands back and forth under the serape she was wearing," but, as in the first episode, she showed no weapon. *Id.* The supreme court reversed both convictions, holding "that a mere verbal threat to use a deadly weapon, unaccompanied by the actual presence of a deadly weapon, dangerous instrument or simulated deadly weapon, does not satisfy the statutory requirement for a charge of armed robbery." *Id.* at 112.

¶11         In *Bousley*, the supreme court faced an issue not present in *Garza Rodriguez*: "[W]hether a defendant may be convicted of armed robbery under A.R.S. § 13-1904 when he commits robbery while positioning a part of his body under his clothing in such a way that he appears to have a deadly weapon." 171 Ariz. at 167. Distinguishing the prior case, the *Bousley* court observed that "[t]he crucial fact in *Rodriguez* was that nothing resembling a weapon was actually present; the defendant simply implied that she had a gun when she threatened to 'shoot the smile off' the cashier's face." *Id.* at 168. By contrast, the *Bousley* court reasoned that when robbers "positioned their hands" to make it appear they are carrying weapons, "simulated weapons were actually present." *Id.* In such circumstances, *Bousley* announced, *Garza Rodriguez* "is not controlling." *Id.*

¶12         Contrary to Montes Flores's argument, *Bousley* leaves no doubt that use of one's concealed hands to create the appearance of a weapon may satisfy the element of a "simulated deadly weapon" in § 13-1904. Because the term "simulated deadly weapon," as used in the statute and interpreted by controlling case law, adequately describes the proscribed conduct, the statute is not unconstitutionally vague.

## B.  Constructive Amendment to the Indictment.

**¶13**    Montes Flores also argues the superior court erred by impliedly amending the indictment through the instructions it gave the jury.  He argues the resulting amendment was not a mere correction of a mistake or defect, but a substantive change to the charge against him, in violation of Arizona Rule of Criminal Procedure 13.5(b) and the Sixth Amendment.

**¶14**    As relevant here, the indictment charged Montes Flores with "taking property of another . . . while . . . armed with a . . . simulated deadly weapon."  Although those words describe a crime charged under subpart (A)(1) of § 13-1904, the superior court's instructions to the jury instead mirrored subpart (A)(2) of the statute by informing jurors they could convict Montes Flores if they found he "used or threatened to use a simulated deadly weapon" in the robbery.

**¶15**    Because Montes Flores failed to object in the superior court, we review only for fundamental, prejudicial error.  *See State v. Henderson*, 210 Ariz. 561, 567-68, ¶¶ 19-20 (2005); *see also State v. Freeney*, 223 Ariz. 110, 114, ¶ 23 (2009) (violations of Rule 13.5(b) "do not fall into [the] category" of structural error).  "Fundamental error is limited to those rare cases that involve error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Valverde*, 220 Ariz. 582, 585, ¶ 12 (2009) (internal quotation omitted).  A defendant arguing fundamental error also must prove "that the error caused him prejudice." *Id.*

**¶16**    An indictment "limits the trial to the specific charge or charges" alleged.  Ariz. R. Crim. P. 13.5(b).  "Unless the defendant consents, a charge may be amended only to correct mistakes of fact or remedy formal or technical defects." *Id*.  When an indictment is amended to allege an offense with materially different elements – "even if the two [crimes] are defined in subsections of the same statute" – the result is a "change in the nature of the offense" that violates Rule 13.5(b). *Freeney*, 223 Ariz. at 113, ¶¶ 16-17.

**¶17**    Separate from Rule 13.5(b), the Sixth Amendment requires that a defendant receive "actual notice" of the pending charges. *Freeney*, 223 Ariz. at 114, ¶ 24.  But not every violation of Rule 13.5(b) infringes a defendant's Sixth Amendment right to notice. *Freeney*, 223 Ariz. at 114, ¶ 25.  Even when the nature of the offense is changed, if the defendant

receives "constitutionally adequate notice" of the modification, he is not prejudiced and the Sixth Amendment is not violated. *See id.* at ¶ 26. In this inquiry, the issue is whether the defendant "received actual notice of the charges" from any source. *Id.* at 114-15, ¶¶ 24-29 (citing pretrial disclosures, prosecution's notice of intent to call specific witness, joint pretrial statement and allegation of dangerousness).

¶18 Here, as Montes Flores argues, the indictment alleged he *possessed* a simulated deadly weapon, but the jury was instructed on *use or threatened use* of a simulated deadly weapon. Assuming for purposes of argument that the jury instruction amounted to a material change in the indictment, *see id.* at 111, 113, ¶¶ 2, 4, 6, 15-17, we conclude Montes Flores was not prejudiced by the violation of Rule 13.5(b).[3] Viewed in its entirety, the record reflects Montes Flores knew the State was alleging and intending to prove that he threatened to use a simulated deadly weapon during the commission of the robbery.

¶19 In the recorded 9-1-1 call, the store's assistant manager reported that a man had approached him, "said he had a gun," and demanded money. When the emergency operator inquired whether the victim had seen a gun, he stated he had not, but explained he had seen the robber place "his hand in his waistband." Surveillance video likewise shows that Montes Flores moved his hand under his shirt and inside his waistband as he leaned across the counter toward the victim. In addition, at a settlement conference nearly five months before trial, the prosecutor asserted that the State would prove that Montes Flores used a simulated deadly weapon and threats of force to commit the robbery. The prosecutor's recitation of the requisite elements of the charge referenced § 13-1904(A)(2), not subsection (A)(1). Moreover, the State alleged in the joint pretrial statement that Montes Flores "committed an armed robbery by simulating a deadly weapon and coercing the cashier to give him the cash from the drawer." The use of the verb "simulate" meant that the State was not going to try to prove that Montes Flores committed armed robbery

---

[3] The issue in *Bousley* was whether the defendants' pleas were supported by sufficient factual bases. In that context, the court held the defendants could be convicted of violating § 13-1904(A)(1) for using their concealed hands to simulate guns during the robbery and could be convicted of violating § 13-1904(A)(2) by orally threatening to "blast" a store clerk as they used their hands to simulate weapons during the robbery. 171 Ariz. at 167-68. As relevant here, the court reasoned that one violates § 13-1904(A)(1) (robbery while "armed with a . . . simulated deadly weapon") by committing a robbery while pretending that one's hand is a weapon.

while in possession of ("armed" with) a simulated deadly weapon under § 13-1904(A)(1), but that he simulated a deadly weapon during the robbery, in violation of § 13-1904(A)(2). Thus, Montes Flores had actual notice before trial that the State intended to prove he used or threatened to use a simulated deadly weapon in violation of § 13-1904(A)(2).

**¶20** Further, Montes Flores has not shown any prejudice from the purported change in the charge. He has not argued that the amendment affected his litigation strategy, trial preparation or examination of witnesses. *See Freeney*, 223 Ariz. at 115, ¶ 28. Instead, he only argues that his lawyer focused in closing argument on the absence of an actual weapon and failed to address any threatened use of a simulated weapon. Although defense counsel asserted the State had failed to show that Montes Flores "presented" a deadly simulated weapon to the victim, she also argued that a robbery does not become armed robbery when the robber claims to have a gun and places his hand underneath his shirt if he does not expressly threaten to use a weapon. Thus, Montes Flores's counsel argued the State failed to prove he committed armed robbery under either (A)(1) or (A)(2).

**¶21** On this record, Montes Flores had actual notice of the charges against him and so suffered no prejudice from the Rule 13.5(b) violation and no infringement of his rights under the Sixth Amendment. *See Freeney*, 223 Ariz. at 114, ¶ 26.

## C.  Evidence to Support the Conviction.

**¶22** Finally, Montes Flores contends the superior court improperly denied his motion for judgment of acquittal on the armed-robbery charge.

**¶23** We review *de novo* a superior court's ruling on a motion made under Arizona Rule of Criminal Procedure 20. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16 (quotation omitted) (emphasis omitted). The evidence may be direct or circumstantial. *Id.* A judgment of acquittal is appropriate only when "there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). In reviewing the sufficiency of the evidence, "we do not weigh the evidence; that is the function of the jury." *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004).

**¶24** Under A.R.S. § 13-1902(A) (2018), a person "commits robbery if in the course of taking any property of another from his person or

immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance." The court instructed the jury that it could convict Montes Flores if it found that, in the course of committing robbery, he "used or threatened to use a simulated deadly weapon." *See* A.R.S. § 13-1904(A)(2). A "[t]hreat" means "a verbal or physical menace of imminent physical injury to a person." A.R.S. § 13-1901(4).

¶25 The victim testified that Montes Flores twice told him, "I have a gun." *Garza Rodriguez*, however, held that one may not be convicted of armed robbery for threatening to use a gun if there is no evidence of an actual or simulated deadly weapon. 164 Ariz. at 112. Montes Flores argues there was no evidence he simulated a weapon; he contends his hands were never hidden beneath his clothing. But the store surveillance video, which was admitted in evidence and played for the jury, belies Montes Flores's description of his conduct at the convenience store. The video shows that in committing the robbery, Montes Flores slipped his hand under his shirt and the waistband of his pants, then shifted his obscured hand slightly toward the center of his waistband. By shifting his hand beneath his shirt and waistband, he created the appearance that he was clutching an object.

¶26 Montes Flores further argues, however, that there was insufficient evidence the victim was threatened by his words and acts. While the victim responded to Montes Flores's demand by opening the cash register and handing him the money, he testified he did not "feel threatened" by Montes Flores. And, although the victim saw Montes Flores's hand in his waistband, the video shows that at the moment Montes Flores shifted his hand beneath his shirt and waistband as if to simulate a weapon, the victim was not looking at him, but was looking instead in the direction of the cash register.

¶27 Montes Flores offers no legal authority in support of his contention that a conviction under § 13-1904(A)(2) for using or threatening to use a simulated deadly weapon requires proof the victim of the robbery felt threatened by or even perceived the simulated weapon. The statute itself contains no reference to the victim's reaction to the defendant's threat or use of a weapon. Subpart (A)(1) ("armed with" a deadly weapon or simulated weapon) likewise does not refer to the victim's reaction to the defendant's weapon or simulated weapon, and *Garza Rodriguez* expressly rejected the argument that a conviction under (A)(1) requires proof the victim saw the weapon or the simulated weapon. 164 Ariz. at 111; *see State v. Snider*, 233 Ariz. 243, 246, ¶ 8 (App. 2013) (same). In the absence of statutory text requiring proof of a particular reaction or response by the

victim, we will not impose such a requirement. *See In re Ryan A.*, 202 Ariz. 19, 22, 23, ¶¶ 9, 13 (App. 2002) (conviction for "threatening or intimidating" under A.R.S. § 13-1202(A)(1) (2018) does not require proof that victim felt scared or threatened).

¶28        By contrast, in another criminal context, the legislature has made plain that the victim's response to the defendant's act is a required element of one variety of the crime of assault. A.R.S. § 13-1203(A)(2) (2018) ("person commits assault by . . . intentionally placing another person in reasonable apprehension of imminent physical injury"). Consistent with the text of that statute, we have held that an assault conviction under § 13-1203(A)(2) requires proof of the victim's mental state. *See State v. Garza*, 196 Ariz. 210, 211, ¶ 4 (App. 1999) (proof of "apprehension of imminent physical injury" may be found in victim's demeanor while testifying about the incident as well as acts victim took in response to defendant's conduct); *State v. Baldenegro*, 188 Ariz. 10, 13 (App. 1996) (evidence sufficient to allow jury to "infer that [victim] acted out of fear or apprehension").

¶29        Further, although subpart (A)(2) of the simple assault statute directly implicates the victim's response, the same is not true with § 13-1204(A)(2), under which a person commits aggravated assault by committing assault using "a deadly weapon or dangerous instrument." A.R.S. § 13-1204(A)(2). That statute, like § 13-1904(A), does not reference the victim's perception of or reaction to the use of a weapon, and we have held that when a defendant uses a deadly weapon to commit an assault under § 13-1203(A)(2), the State need not prove the victim was placed in reasonable apprehension of harm *by a deadly weapon*. *See State v. Torres*, 156 Ariz. 150, 152 (App. 1988) ("There must be an actual, subjective apprehension of injury, but the apprehension need not extend to fear of the gun.") (citations omitted).

¶30        We conclude that, just as aggravated assault by use of a deadly weapon may be proved without evidence the victim perceived a deadly weapon, armed robbery under § 13-1904(A)(2) does not require proof the victim perceived or felt threatened by the defendant's weapon or simulated weapon. Accordingly, the record contains sufficient evidence from which a reasonable jury could find that Montes Flores took property from the victim's immediate presence and against his will, and while committing that robbery, threatened to use a simulated deadly weapon. The superior court did not err when it denied Montes Flores's motion for judgment of acquittal.

## CONCLUSION

¶31 For the foregoing reasons, we affirm the convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA